Our case this afternoon is in re Marriage of McDonald. The show, it's at number 419-0101. For the appellant is Barbara Weber. For the appellee is Dwayne Dieters. Is that pronounced correctly? Dieters. Dieters? Okay. Ms. Weber, you may proceed. May I please report, counsel? Counsel. The Merriam-Webster Dictionary defines protect as to cover or to shield from exposure, injury, damage, or destruction. To guard. Other definitions are to keep safe from harm or injury or to aim to preserve. The issue before this court today is whether the orders incurred by the trial court were sufficient to protect the McDonald girls, ages 8 and 9 years old. Children who had no say in whether there was a divorce. Children who had no say in whether their wife was to be managed by a minority. And children whose care and safety is entrusted to the courts. As you know, as this court stated in the May's decision and as the statute directs, the trial court shall enter orders as necessary to protect the children upon finding serious endangerment. First, protect. Then, rehabilitate. The ruling in this case is insufficient. Based on the evidence at trial and the trial court's own conclusions, there is no reason to believe that the trial court's order would adequately protect the mental, emotional, and physical health of the children in this case. Why did the trial court think so? The trial court, I believe, missed its direction in this case. The trial court, according to its own work, focused on what the root of the problem was for Mr. McDonald, for Joel McDonald, and focused on when they perceived misconduct occurred. The court did not consider what was happening to these children and when it was happening, or specifically what other orders were necessary to protect the children. The court specifically said... Didn't you argue that to the court? I'm sorry? Didn't you argue that to the court? Argue that the court was... The point you just made. Well, I specifically asked for orders that involved protecting the children from... Didn't you explain why? I don't know if I specifically explained why or not in this particular case. Go ahead. Your Honor, we brought up an abbreviated argument. But in focusing on the root of the problem for Joel McDonald, the court focused on alcohol abuse, anger, and lack of understanding on child development and emotional needs. These are not short-term concerns. The court should have entered orders to suspend overnight parenting time, as recommended by the one expert witness in this case, who had been counseling these children for six months. Everything else had failed up to this point. Joel McDonald, the children's mother, had tried to alleviate the children's stress as well as the physical manifestations of that stress. The girls were suffering from aneurysms and incapricious, inability to control their bowels, their bladder levels, sleep at night, and at other times. At eight and nine years old, a substantial problem. She took them to the doctor. She had them on medication. Joel ignored it. He sent medication home untaken. Instead of calling the doctors, instead of responding to Dr. Osgood or consulting his own physician, all things are near the law, and under the terms of the parties agreement he was allowed to, on his own, he instigates therapy. Setting an alarm clock at two a.m. and exploiting punitive measures on the girls as they continue to have accidents. Moreover, he sends ugly, intrusive messages to Jill. The girls still eat diapers and they're peeing in their bed. Horrible. Jill asks Joel to stop drinking. What's his response? He builds a pyramid, a beer can, to show the girls and mock the concern raised by their mother, the concern raised in the presence of the girls prior to one of their parenting times. This, from a man who admitted on the stand that when he got angry, they had scared the girls, that they cried. This is a retaliatory gesture, not just towards Jill, but also towards these girls. He could have had an assessment done. He could have started treatment. He could have started his own counseling. Nothing. Jill told Joel about the counseling. He refuses to call Dr. Osgood back. He doesn't consult another counselor. He doesn't begin counseling himself or take any parenting classes on his own. Instead, in the evening, when he has a young daughter, nine years old, who he knows is having some nightmare problems and concerns about death, he instigates his own therapy. List five things that are most important to you. Trump was about to throw them away. They don't matter anymore. Nothing matters today. On page 13 of the court's written order, the court writes that, in the present case, many of Jill's claims are about what is in the best interest of her children. That is not the standard in this proceeding. The petition for modification looks at the children's best interest, while the restriction, which is this case, looks at the suitability of a parent whose parenting time may be curtailed. Therefore, the focus of this court's analysis must be on Jill's conduct and the effect on R.M. and K.M. Is that a correct statement? I don't think it's correct at all. I don't think it's a statement that this court, in particular, has agreed with in the past. I think he's saying that, to Javier, I don't know how to pronounce that case, where they parse these words and come into these debates on, is a restriction different? Does it necessarily have to include the same factors that we consider to be modification? If it includes the same factors as modification, then aren't we subsuming the restriction of modification? How can that be right? Here's a difference for you. It's wrong. The statute says, if there's serious endangerment, then we must enter orders that protect the children. Substituting that, protecting the children, is guarding their best interest. It can be something that is intertwined, that you do not have to be mutually exclusive. And I think this court, in the Gibson case, makes a distinction in that regard. So the court agreed that it would enter orders as necessary to protect the children. Your disagreement is whether those orders are adequate? I do disagree that those orders are adequate, and I do disagree as to whether this trial court considered protecting the children within the context of Joel's behavior and the impact it was having on these children. It's clear. The trial court found that these children have nightmares. Any reason it increases is during the evening hours. They're hiding these accidents from their father. Kids' mean-spirited therapies take place at night, and yet the trial court says, there's really not enough going on at night here for me to go ahead and restrict parenting time, so I'm not doing it. That's wrong. A, there's plenty going on here, and B, I don't care when Mr. McDonald's behavior occurs, if the impact is being felt by this 8- and 9-year-old child in the evening, he has to protect them in the evening. If the respondent did what the trial judge ordered them to do, would that succeed in changing his behavior? I have no idea, and we won't know anything for 6 months. And during those 6 months, we are not protecting these children at all. And Dr. Osgood, the expert in this case, said that from the day we started till the day we finished, it had been getting worse. Joel's behavior, let's assume he was true when he said, well, I wasn't drinking in April till the time of this trial. And so what? The impact was worse for the children. He was still sending ugly text messages. He was still engaging in harmful behavior, discussing the court case with the children, still traumatizing them, and more importantly, the trial court found absolutely no reason to believe that Joel would follow the orders that he entered. Counseling alone, Joel said, I'm not going to be your man in counseling. The trial court said Joel didn't accept responsibility. Joel doesn't take this process seriously. Joel doesn't understand how his conduct affects the children. He's clearly angry. He sends horrible YouTube videos, petrificant text messages, vulgar phone messages throughout these proceedings. He continued to involve the children in these proceedings. After we started hearing evidence, all of a sudden, parenting with a toxic ex shows up on his nightstand where he admits the children are in that room. What's our standard of review? Standard of review is whether or not this court's ruling was against the manifest way of the evidence. Whether no reasonable person would order what the judge ordered in this case. Based on the trial court finding, no reasonable person would think sending those children back into that home for six months to continue to endure this with no order to protect them would be of the best interest, would solve the serious endangerment issues, would not perpetrate a manifest injustice on this eight and nine year old child who can't control their bowels and bladder, who can't control their emotions when they're crying in school, who can't sleep, who has nightmares. So the court did grant relief for corrected measures, correct? Correct. So the court heard the evidence, heard the arguments of the parties. How is this, how are we in a better position to find that this court was against the manifest way in its ruling? Perhaps it's experience that this court has that the trial court does not have. Perhaps it's a little bit of standing back from the case. I don't know how you're in a better position other than you can look at the statute, how it's been applied, and apply the correct focus which is on the children. Not just on Joel McDonald, not just on fixing him, which would benefit everybody including Joel, but also protecting the children so while we're fixing these long term problems, they're not getting worse. Sounds like you're asking us to retry the case and come up with our own determination. Nope, not at all. You don't have to retry the case because the judge found everything that you need to decide that this just doesn't match. He found Dr. Osgood's connecting of the dots to be valid, her conclusion that the stress which causes these issues to be directly related to Joel's behavior. He found that Joel was not going to accept responsibility, not take these orders seriously. He wasn't willing to participate in counseling. We can take his judgments of credibility, his conclusions about Joel's character, his analysis and acceptance of Dr. Osgood's conclusions and say, whoa, okay, this wasn't where I was thinking this was going to go. This wasn't where a reasonable person would take this. If you find all of this, how come we're not protecting these children? How come while we're fixing this, we're not suspending the overnight parenting time which Dr. Osgood recommended? Everything is there. There is no one else to protect these children. Jill did everything she could, not just trying to involve him in the relief, but also inflating. When he wanted to change the schedule, she did. When he gave him a late notice on vacation, she did. How was she repaid? When she wanted to go on vacation, he fills the heads of the kids with KKK and gun violence in St. Louis. Crocodile eating children in Florida. Jaws taking place on the beach where you're going in Boston. He is angry. He is retaliatory. He does not have off switch when it comes to getting at Jill, even if it affects his kids. Somebody has to protect these kids and now. You've got a 9-year-old with suicidal ideation. A 9-year-old who vocalized a plan for killing herself. All you have to do is turn on the evening news to know 8 and 9-year-olds, unfortunately, can be successful doing that. It's monstrous. There has to be some protection for these children while Joel is addressing the concerns that have been raised about his parenting. I will suggest to the court that protecting them by suspending overnight visitation is actually not just in the best interest. Not just protecting the girl, but it's protecting the relationship the girls have with their father. Because it got worse during the litigation. His behavior continued. They need a break until he gets back together so that when they have a better relationship with their father, it's a better one. That everybody's needs are being addressed. That they've been given some relief, some recovery time, and can be reintroduced, hopefully, to a more educated, a less angry father. I'm asking this court to protect these children now. Suspend the overnight parenting time with Joel McDonald, pending the 6-month review. It's eminently reasonable. It's similar to what this court did in the Mays case, where it recognized that we also have to look at the emotional harm these children are being subjected to. The emotional toll, I believe, was part of the court's wording. That being subjected to their father under these conditions is padding on these children. In this particular case, just like in the Mays case, we've got a father with anger control issues that are scaring the children. But beyond just scaring the children, like it did in the Mays case, we've got physical manifestations. Lack of sleep. Aneurysis and anapheresis, which honestly, I've only ever seen that in child abuse cases in my 20 years of practice. That is a very serious physical ailment condition that these girls are suffering from. We need to protect them so it doesn't affect them educationally, socially, so it doesn't harm this family further. And that's all I'm asking for today. It's for you to protect them while Joel's given a chance to understand child development, to deal with his anger, to understand the emotional needs of these two children, his two children, to become a more suitable parent. I think the direction of the statute is clear. Protect first. Protect these children. Thank you. Thank you, Ms. Weber. You'll have the opportunity to address this again rebuttal. Mr. Daters. Good afternoon. May it please the Court. Counsel. As you're well aware, this case has that as its issue, a petition to restrict hearing time. The trial court heard evidence over a period of two months, including five hearing dates. The initial one was just the initial call where I had to report containments, which was granted August 24th. We heard from one witness, Dr. Osgood, on September 6th. The respondent was called as an adverse witness. After those first two court dates, the second and the 24th, the petitioner requested that the parenting time be restricted, which the trial court denied at that time. September 4th, the petitioner testified. In October 12th, the respondent's parents testified. October 15th, the respondent testified again, and then there was a rebuttal from the petitioner. Only those first two court dates was there a request to restrict. There wasn't a second or third request after the court had heard some of the evidence. There was a request, of course, for an in-camera interview, and Joel exercised his right to have his attorney be present, and the court ultimately denied the request. November 2nd, oral argument was scheduled for the week before Christmas, and prior to that, the petitioner filed a motion to remove the proofs and petition to restrict the parenting time until the Christmas holiday was deferred. December 11th, and again, the court denied to restrict parental parenting. December 28th, the court heard our arguments, and counsel was correct. We were on a short argument schedule, and the issue is ruling on January 22nd. The court entered certain orders. Joel was not to consume alcohol within 24 hours of parenting time, take prescription medicine as prescribed, engage in counseling, and enroll in a parenting class. Any order is reviewable after six months, which, of course, we're fast approaching. Was Judge Rosenbaum's ruling against the manifest weight of the evidence or abuse of discretion? We believe the answer to both of those questions is no. No challenge has been issued as to whether or not Joel's actions constituted serious endangerment, frankly, because of the standard. It's such a low standard for us to come back here and say, no reasonable person can find out. I don't think I would be able to win that argument. So, focus our energy where we can be focused. So, the challenge, of course, is that the court abuses discretion. The court looked, I believe, at the Ingram-Rogers, I should hyperlink, I don't know how to pronounce that, and talked about the modification looks at the best interest of the child directly, restriction looks at the suitability of the parent. The visitation will be partaked. And I think that's where we should be. This is a bit of a hybrid approach. A court is required to enter orders, but the court can and will see the suitability of the parent while making orders that are necessary to protect the children. I have not been able to find any statute or case that requires the court to restrict parenting time through a reduction, elimination, or other adjustment on a finding. The statute clearly gives eight or nine different options, but the last one didn't kind of catch all the other conditions. What was your response at the trial level when the request was made to restrict the parenting time? We objected to both of them, obviously. He was and did volunteer to abstain from alcohol at that first hearing on August 2nd, which the court made a condition of discontinued parenting time. You heard my question to Ms. Weber, why will the orders entered by the trial court be adequate to provide the necessary protection for the children? I think they will, Judge, because the court, Judge Rosenbaum, is looking at what the respondent is doing as far as what is happening with the children, and his orders are directly related to what the respondent needs to do, what behaviors he needs to correct. The court did, in abuse of discretion, obviously, urge when no reasonable person would take the view adopted by the court, and I think, of course, we had to look at whether or not a reasonable person would not take that view. Judge Rosenbaum did say this case is a close call, and though it would be low-burdened proof, we would agree with him that the petitioner has been overly sensitive, and blown things out of proportion. Judge Rosenbaum mentioned the spill tea, taking the train lift off of the bike, being silly in a drive-thru, lack of air conditioning. We would add to that washing hair in the lake, doing chores and being told when chores were not done appropriately, going for a hike with a group of people, leaving a child home by herself for five minutes at that child's request, for the other school to get going. It seemed clear to me, especially towards the end, that the petitioner seemed to have the kids on a mission to report back anything that he seemed to get the respondent in trouble with. At one point, they went snooping around in his house, into his bedroom, found the book on the nightstand, texted a picture of it to their mother, and took it to her attorney and Dr. Osgood. What was the book? Co-parenting with a toxic ex, I believe it was called. And Dr. Osgood conceded she had never heard of the book, had not read any reviews on the book, was not familiar with it, and surprisingly stated that she had never heard a phrase, you can't put a judge's book by its cover. This was a self-help book that Joel had picked up to try to help him be a co-parent. There was an allegation that the respondent had changed the girl's diet, asked her to do her weight and make fun of her weight, claimed that his mother baked a diet birthday cake, came out with the evidence that one of the children changed her diet on her own and then changed it back. It wasn't anything any parent or grandparent had done. The respondent's mother testified that it was not a diet cake that she made, it was a regular cake, the child ate all of it, and had actually had ice cream with it. There was no evidence that the respondent ever made fun of the girl's weight. Dr. Osgood herself even outlined in her testimony that the children were obese. I think Judge Rosenblum recognized clearly the hypersensitivity involved, entered the orders within his discretion, and he felt would protect the children. He stated the women overnight visitation was not appropriate, and we would agree with that. There was evidence that sometimes the girl was wet to bed, but that evidence was also that it was not limited to women or the respondent. I think it's noteworthy that there was not any evidence presented by the petitioner in the form of medical reports or testimony from a physician or even that the psychologist reviewed any medical reports. She relied on the hearsay and statements of the child's mother or the children's mother. In their reply, the petitioner stated that the respondent compared the girl's appearance to a picture, remarking that the picture was of a thin woman. That's not the case. The evidence was that he showed the picture and said that he thought she was pretty. There was no testimony of this woman being thin, so it would seem that according to the petitioner to say the person was pretty, that somehow that's saying that the children's mother isn't or that which was argued to the trial court that the girls aren't. I think, Your Honor, this is a stretch and another example of the hypersensitivity involved around this case. Dr. Osgood admitted she had never seen the picture and has never been told by the girls that the respondent said that the girls were not pretty. We've heard mentions in the reply brief as well as here today about the text messages and voicemails, but what the evidence demonstrated and the petitioner admitted is that the girls did not hear the voicemails. The burden is obviously on the petitioner, and they never showed that the girls ever read any of the text messages between the parents. There was quite a bit of hearsay testimony, especially through Dr. Osgood, and apparently had never mentioned to Dr. Osgood anything about texts or voicemails. Absence of evidence is obviously absence of evidence. The burden is on the petitioner. She could have requested the appointment of a GAL, but did not do so. The respondent was within his rights to be present during a court in-camera interview with the children. Why didn't you request the GAL? It was, I guess I could say it was a strategical decision. It wasn't anything that client and I had discussed and we felt was necessary. Judge Rosenbaum did respect the respondent's credit time by putting conditions on it. As I mentioned, probably to sound like a broken record, there has to be a finding that there was a clear abuse of discretion. There was no motion to be considered filed by the petitioner, so the trial court did not have an opportunity to correct any error that they are asserting. Denial of overnight visits was not necessary in the court's opinion, and this decision was not against the manifesto and the evidence. There is evidence that the girls enjoyed their evening time with their father, reading books, things of that nature, reading some exhibits in the file regarding them. There was testimony regarding one argument occurring in 1993. The girl's presence during it was brief. The respondent's father, Inspector Attorney Champagne, even accepted some of the responsibilities for that argument. The court has to look at their review of the entire record and find that the opposite conclusion is clearly evident. In the end, I don't think that position can be reached, that a reasonable person would take the view adopted by Judge Rosenbaum. His ruling is not against the manifesto and the evidence, especially when I would argue that he's saying that this was a close call. We would ask that the court not reverse this. Thank you, counsel. Ms. Weber, any rebuttal? Well, Your Honor, whether or not this was a close call as to serious engagement seems to be relevant once we have the finding of serious engagement. It is what it is. Now we move on to protect these children. It's also irrelevant whether the children saw the text messages or heard the voicemail messages from Mr. McDonald. When it becomes clear that Mr. McDonald, at the time he was sending them, sent them at times he knew the children would be awake and he knew that that was a cell phone that the children frequently used. More than that, it's circumstantial evidence which goes to substantiate the claims of the children as relied upon by Dr. Osgood, that he had this explosive temper that could go on in these explosions for hours. Indeed, that's what he did with his text messages. That's what he did with the voicemails. That's what he did with the YouTube videos. The fact that Judge Rosenbaum classifies the incidents into four categories as a way of trying to make sense of this and exonerate it is not problematic. The fact that he classified the incidents in four different categories. Normal particles, blown out of proportion, lack sufficient evidence, and those that cause concern. What was your concern? You said it was problematic? It's problematic because when he then gets to working on his opinion, it becomes clear that he wants to focus only on the incidents that cause concern. You have to take a case in its totality. You have to consider Dr. Osgood's expert testimony where she said that the totality of the behavior of Joel in the presence of these girls has caused a generalized anxiety that they feel whenever they're around Joel. That it has caused a generalized fear of nighttime that has caused, when the inuresis and the incapricis is most present, when the nightmares and the sleeplessness are experienced by these girls. And a fear that they feel present even during the daylight. So, I think that in and of itself is telling as to the manner in which this trial court, in my view, Ms. Belleau, to suggest that somehow, as the trial court does, and Mr. Danger's gone on to, that Jim McDonald was wrong to tell, or somehow having a strategy to tell these girls not to, or to tell Dr. Osgood absolutely everything, puts my client in catch-22. You can't tell these children what to tell Dr. Osgood, or you're biasing the information that the counselor has. As parents, you're not supposed to comment on dad's behavior. You're supposed to have somebody independent do that. Who other than Dr. Osgood is supposed to do that? She's an independent expert. She should filter the information for me and render her opinion. In this case, she did. She strongly suggested to the court that serious engagement would continue, not result, would continue if these children had continuing overnight parenting time, which only got longer. I ask you to heed her words. I ask you to restrict and eliminate or suspend overnight parenting time pending the six-month review. Okay, thank you, counsel. The court will take this matter into recess. And we invite you all to remain in recess.